AETNA CASUALTY & SURETY COMPANY, *et al. v.* EDGAR C. LAWSON, *Auditor, etc.*

(No. 7362)

Submitted September 14, 1932.    Decided November 22, 1932.

*H. B. Lee,* Attorney General, and *R. A. Blessing* and *W. Elliott Nefflen,* Assistant Attorneys General, for appellant.

*Steptoe & Johnson, Stanley C. Morris,* and *James M. Guiher,* for appellees.

WOODS, JUDGE:

This is an appeal from a decree of the circuit court of Kanawha County, denying a motion to dissolve a temporary injunction, whereby the insurance commissioner was enjoined from revoking the licenses of thirty-seven casualty companies, which had refused to submit to his proposed regulation of premium rates on automobile public liability and automobile property damage insurance. The correctness of the chancellor's ruling is dependent upon the interpretation to be given the several statutes declared upon in the pleadings.

It is the contention of the appellant that the appellees are

indemnity companies within the meaning of article 5, chapter 31, Code 1931, and being such, are, by virtue of section 15 of said article, subject to the provisions of sections 11 to 22, inclusive, of article 4, chapter 33, Code 1931, granting said appellant regulatory power over fire insurance rates.

While the section defining "indemnity company" states specifically that the terms "shall not include insurance companies authorized to issue policies insuring property against loss by fire, theft, robbery, or other cause, or issuing life, health or accident insurance policies," such inhibition does not negative the express provision that an indemnity company, among other things, is one authorized "to engage in the business of making contracts of indemnity." The plaintiffs in their bill of complaint admit that a great portion of their business is writing policies, indemnifying owners of automobiles against legal liability for personal injuries to others and for damage to the property of others, due to ownership or operation of such automobiles. This is indemnity insurance pure and simple, and does not come under the inhibition against "insuring property" against loss, as contended for by the appellees. The plaintiffs also allege that they write fidelity and surety bonds, which business is included in the definition of indemnity companies.

But what effect is to be given to section 15? That section provides: "All companies engaged in this state in the exercise of any of the rights or powers mentioned in this article, and all other companies of similar character, shall be subject to the same *examination and supervision* by the insurance commissioner as is now provided for fire insurance companies incorporated and/or doing business in this state." Does this statute purport to adopt to indemnity companies the provisions of sections 11 to 22, article 4, chapter 33, Code 1931, and thereby confer authority upon the auditor to require submission of all proposed rate changes to him for approval, as in the case of fire insurance rates?

Appellees point to the predecessors of the foregoing "adopting statute" (see Acts 1903, ch. 8, sec. 7; Acts 1908, ch. 31, sec. 7; Acts 1919, ch. 80, sec. 15) ; and to the action of the revisers, the legislative committee, and the legislature, as noted in the Official Code 1931, as being indicative of the legislative

intent not to adopt said sections 11 to 22 by the use of the word "supervision". By reason of the absence of a statute purporting to regulate rate-making bureaus, or the general nature of that enacted in 1913, conferring on the auditor certain supervisory powers over those doing business in this state, the above listed adopting statutes admittedly did not embrace supervision over the rates of any class of insurance. The act of 1921 relating to rate-making bureaus, as did that of 1913, clothed the auditor with authority to require such bureaus to remove discriminations. However, in 1927, the legislature in amending and re-enacting the act of 1921, apparently abandoned supervision and control over all rate- making bureaus, other than those having to do with fire risks. This latter enactment conferred upon the auditor the right to fix rates in certain instances. Section 1 thereof (See Acts 1927, ch. 31) provided that "Every fire insurance company or other insurer authorized to effect insurance against the risk of loss or damage by fire in this state shall maintain or be a member of a rating bureau." The majority of the subdivisions of the statute make specific reference to fire risks, and are not adaptable, in most instances to other kinds of risks. This act does not specifically require, as did those of 1913 and 1921, that all rate-making bureaus submit to the supervision of the auditor. Chapter 28, Acts 1929, is identical with that of 1927, except for certain changes in section 7, regarding appeals. An the latter act, with but slight changes, was carried over into article 4, chapter 33, Code 1931, being sections 11 to 22, inclusive.

In 25 R. C. L. 908, sec. 160, relating to the effect of adopting statutes, it is stated: "But when the adopting statute makes no reference to any particular statute or part of statute by its title or otherwise, but refers to the law generally which governs a particular subject, the reference in such case includes not only the law in force at the date of the adopting act but also all subsequent laws on the particular subject referred to, so far at least as they are consistent with the purposes of the adopting act."

The fact that the legislatures of 1927 and 1929 sought to limit the auditor's jurisdiction in the premises to rate-making bodies dealing with "fire risks", is persuasive argument that

it intended that such regulation would stop with fire risks, and, therefore, did not extend over indemnity companies by reason of the adopting statute of 1919.

But we must look farther. Did the law-makers in adopting the Official Code, evince an intention other than that theretofore indicated? The adopting statute again appears, with some alterations. At the time the legislative committee removed the supervision of indemnity companies from the banking commissioner, where the revisers had placed it, back to the insurance commissioner, the rating bureau statutes did not apply to indemnity companies, for section 5 of article 5 of chapter 31 specifically provided that such companies might prescribe such terms and conditions for entering into any contract or undertaking and make such charges for any such service as the officers thereof should deem advisable, except that where money was loaned usury would not be permitted. At the time of the adoption of the Code, section 15 remained as drafted by the legislative committee. However, section 5 was altered in certain particulars. The proviso to the effect that no indemnity company shall make or issue any policy of insurance insuring property against loss by fire, theft, robbery or other cause, or make or issue any life, health or accident insurance policy, was deleted, and along with the general powers was inserted the provision authorizing such companies to "issue policies of insurance against loss from any cause, other than by death of any person or by fire." In place of the last paragraph of section 5, which read: "Any indemnity company may prescribe such terms and conditions for entering into any contract or undertaking and make such charges for any service as the officers thereof shall deem advisable; Provided, that, in loaning any of its funds, it shall not charge a rate of interest in excess of that permitted by law," the legislature substituted the following: "Except as otherwise provided by law, any indemnity company may prescribe such terms and conditions for entering into any contract or undertaking and make such charges for the service as the officers thereof shall deem advisable." The legislative note states that: "The proviso inhibiting an indemnity company from issuing insurance policies, inserted by the revisers, is omitted, and the power to effect certain kinds of insurance is given in

conformity with sec. 9, ch. 54C, Code 1923. In view of this change the last paragraph as reported by the revisers is modified by adding the words 'Except as otherwise provided by law.' This addition makes the last proviso in the revisers' section unnecessary, and it is therefore omitted.''

Rate-making could not possibly have been adopted to indemnity companies prior to the act of 1927. By virtue of the very nature of that act, as already pointed out, the adopting statute of 1919 did not operate to confer rate-making authority in the auditor over indemnity companies. As long as competition is sanctioned in any business, those engaging therein are permitted to establish their own rates. And when, in the opinion of the legislature, regulation thereof becomes necessary, such businesses are by legislative enactment placed under designated regulatory bodies. The fact that fire insurance has been subjected to such regulation, does not show legislative intent to regulate indemnity companies. The terms of the adopting statute are ''examination and supervision''. Those terms, as the legislative history will reveal have heretofore had a definite meaning. The auditor, by reason thereof, still supervises indemnity companies by reason thereof. Rate-making, according to the majority of the Court, stands in another category.

The writer cannot subscribe to all of the above reasoning. To him ''supervision'' is an all inclusive term, meaning ''to oversee''; ''have charge of with authority to direct or regulate''. Century Dictionary and Cyclopedia, Vol. IX, p. 6071. Also see A New English Dictionary, Vol. IX, p. 196; Webster's International Dictionary. The statement at the beginning of the last paragraph of section 5, article 5, chapter 31, Code 1931, ''Except as otherwise provided by law'', not only applied to the matter of usury, but is persuasive evidence that the legislature recognized a possible inconsistency between the right conferred upon indemnity companies in said section to set their own rates, and section 15, providing that they shall be subject to the same ''examination and supervision * * * as is now provided for fire insurance companies.''

The decree of the circuit court is affirmed.

*Affirmed.*